IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ESTELA ROSAS,<br><br>Defendant. | No. 3:23-mj-00495-MMS |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, CURTIS VIK, having been first duly sworn, do hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I am a Task Force Officer with the Federal Bureau of Investigation. I have been employed by the Alaska State Troopers (AST) since February 24, 2002. I was given a special deputation by the FBI on May 12, 2016. I was given a special deputation by the U.S. Marshals Service on February 9, 2017, to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I am currently assigned to the Anchorage, Alaska Field Division, where I am a member of the FBI Safe Streets Task Force (SSTF).

2.  Prior to my assignment to the FBI SSTF, as an Alaska State Trooper I was assigned to patrol duties from 2002 until 2004 in Soldotna, Alaska. I was then assigned to the Alaska Bureau of Investigation from 2004 until 2010 in Palmer, Alaska, where I was assigned to investigate property crimes, sexual assaults, serious assaults, homicides

and other serious felony cases. I was assigned to the Statewide Drug Enforcement unit from 2010 until March 2016, where I was assigned to investigate drug and alcohol crimes throughout Alaska.

3. As part of my FBI duties, I investigate criminal violations of federal law, to include federal sex trafficking and prostitution offenses, racketeering offenses, and violations of the Controlled Substances Act. Throughout my law enforcement career, I have received more than 100 hours of law enforcement training. My training and experience has involved, among other things: (1) the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the criminal activity and of the laundering and concealment of proceeds of criminal activity; (2) surveillance; (3) analysis of documentary and physical evidence; and (4) the execution of search warrants.

4. In March 2022, the Honorable Magistrate Judge Matthew M. Scoble issued a report and recommendation finding that I intruded in the attorney-client relationship of an incarcerated defendant, by listening to 11 privileged calls a defendant made to his attorney on a recorded line from jail in 2018. Magistrate Judge Scoble further found that I "was apparently less than forthcoming" with the United States Attorney's Office in my conversations with them about the issue, and that my testimony regarding the matter in an evidentiary hearing before Judge Scoble on October 28, 2019, was "unpersuasive." *See United States v. Stoltenberg*, No. 3:18-cr-00109-JMK-MMS, at Dkt. 709 at 45-46.

5. I make this affidavit in support of an application for a criminal complaint and arrest warrant pursuant to Federal Rules of Criminal Procedure 3 and 4. As explained more fully below, I have probable cause to believe that Estela Rosas has committed the following

federal criminal offense:

> **Count 1**: That on or about August 30, 2023, within the District of Alaska, at or near Anchorage, the defendant, ESTELA ROSAS, knowingly attempted to possess with intent to distribute a quantity of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, or a mixture or substance containing a detectable amount of cocaine, its salts, optical and geometric isomers, and salts of isomers.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Because the affidavit is intended to establish probable cause to support a complaint and secure an arrest warrant, I have not included each and every fact known to me concerning this investigation.

## FACTS ESTABLISHING PROBABLE CAUSE

7. On August 30, 2023, investigators with the Anchorage Airport Interdiction Team (AAIT), while conducting routine manifest checks, identified a suspicious traveler on an Alaska Airlines flight with service from southern California to Anchorage, AK. The one-way ticket had been purchased last minute the day before departure. Based on the training and experiences of the investigators, California is a known "source" state for illegal narcotics to be trafficked from to Alaska. The passenger was identified as California resident Estela Rosas and appeared to be travelling alone. Further routine manifest checks revealed Rosas had traveled two other times from southern California to Anchorage, AK on one-way tickets two times within the last two months, with the most recent trip occurring on August 21, 2023.

8. A records check of the defendant revealed she had previously been convicted in California as an accomplice in a gang-related shooting.

9. Based on my training and experience, narcotics traffickers will typically book last-minute, one-way tickets to evade law enforcement detection. Often these traffickers will travel alone.

10. On August 31, 2023, at approximately 0047 hours, Investigators observed Rosas deplane the Alaska Airlines flight. Rosas was walking significantly slower down the concourse than other passengers who had deplaned after her. Investigators contacted Rosas as she was walking down the concourse.

11. Rosas stated she had flown in from a location in Southern California, and that location was her home. When asked to look at her boarding pass and ID, Rosas appeared to initially have difficulty opening her digital boarding pass but was able to show investigators the boarding pass indicating she had travelled from a city in southern California to Anchorage, Alaska. Rosas did not initially provide identification. Rosas said the purpose of her travel was that she was looking for somewhere to live. Rosas said she had been up to Alaska a couple times this year. Rosas said she packed her bag herself and no one asked her to bring anything up. Rosas said she was staying at a long-term hotel in Alaska. During the contact, investigators noticed Rosas appeared nervous, as she had evasive eye contact, a shaky voice, trembling hands, and irregular breathing. Rosas appeared nervous throughout her contact with law enforcement investigators.

12. As a result of Rosas nervous demeanor, her hands and carry-on luggage were tested with the IonScan 600. The IonScan 600 is an electronic instrument that detects trace amounts of controlled substances. Rosas' hands and carry-on luggage did not indicate the presence of controlled substances. Rosas was escorted to the luggage

carousel where investigators located her two checked luggage items. Both checked luggage items were tested with the IonScan 600 which resulted in an alarm for the presence of cocaine.

13. While investigators were testing the luggage with the IonScan, Rosas asked Investigator Beene "If I tell you the truth can I get out of this?" Rosas then told Inv. Beene "He's walking away right there with the backpack," pointing to a male across the luggage carousel in the Airport.

14. Inv. Beene read Rosas her Miranda rights, which she understood and waived, and indicated that the male she had identified in the terminal with the backpack had provided her the bags to take to Alaska and she did not know what was in the bags.

15. Rosas was escorted to the AAIT office where further interview was conducted. Rosas said she met with the male carrying the backpack, prior to her flight, at a hotel near the airport she flew out of in southern California. Rosas stated that this same male provided her the checked bags to take with her to Alaska. Rosas said nothing was discussed about the checked bags, other than that she would be provided $200-1000 to transport the luggage. Rosas said the man with the backpack paid for her ticket and was going to pay for her return. Rosas again stated she did not know what was in the bags, but said she knew it was something she shouldn't have. Rosas verbally consented to a search of the two checked bags tagged under her name.

16. A search of the two bags revealed approximately 20.8 pounds of methamphetamine in one bag, and 16.2 pounds of cocaine in the other. Each of these

*United States v. Estela Rosas*
Affidavit　　　　　　　　　　　　　　　　　Page 5 of 7
Case 3:23-mj-00495-MMS   Document 1-1   Filed 09/08/23   Page 5 of 7

drugs tested presumptive positive for the respective drugs with the use of a TruNarc controlled substance testing machine.

17. Rosas verbally consented to a search and examination of her cellphone. A further review of airline records and Rosas's phone revealed that Rosas has flown to Anchorage three times in approximately the last two months. Text messages on her phone revealed that she has transported narcotics to Anchorage prior to this current interdiction. Rosas has numerous text messages with a person that discuss airfare, seat arrangements on planes, hotels, and money.

18. Pursuant to my background, training, and experience, as well as the training and experience of other law enforcement personnel with whom I have consulted regarding this case, I know that suspects involved in the distribution of controlled substances will often conceal controlled substances in their checked airline luggage to distribute them in other locations. I know that drug prices are higher in Alaska, and that Anchorage is "destination city" for drugs from "source cities" (including cities in Southern California) due to an increase in profits when sold here. I know that subjects involved in the distribution of controlled substances will often utilize multiple short-duration trips to source locations to obtain drugs and return the drugs to a destination city. I know that subjects involved in the distribution of controlled substances will often book one-way tickets to avoid law enforcement detection, and that often these trips are booked just prior to travel when the subject gets available funds to purchase the drugs and has a source with drugs in hand.

//

19. Based upon the foregoing information, I have probable cause to believe Estela Rosas knowingly or intentionally possessed with intent to distribute a controlled substance. All in violation of Title 21, United States Code 841(a)(1), (b)(1)(A).

## CONCLUSION

20. For the reasons described above, based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Estela Rosas has committed the offenses described in the attached complaint. Accordingly, I ask the Court to issue the complaint and a warrant for Estela Rosas's arrest in accordance with Federal Rule of Criminal Procedure 4(a).

RESPECTFULLY SUBMITTED,

CURTIS VIK
Task Force Officer, FBI

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on this 7th day of September 2023.

HON. MATTHEW M. SCOBLE
Chief United States Magistrate Judge
District of Alaska